PER CURIAM.
In this workers’ compensation case, the Judge of Compensation Claims (JCC) granted the employer/carrier’s (e/c’s) claim for reimbursement from the Special Disability Trust Fund (the Fund). On appeal, the Fund argues that it was error to award reimbursement where: (1) competent substantial evidence did not support a finding that the employer had the requisite knowledge, prior to the industrial accident, that its employee had a permanent preexisting physical condition that would likely be a hindrance to employment; and (2) personality traits could not constitute a “permanent physical impairment” under section 440.49(2)(b)l., Florida Statutes (1985), so as to permit Fund reimbursement. We reverse the award of Fund reimbursement based upon the absence of employer knowledge, without deciding whether personality traits may be deemed a “permanent physical impairment” for purposes of Fund reimbursement.
*1278 Gloria Roller was injured in a compensable industrial accident in July 1986, after having spent 16 months working for appellee/em-ployer. During the latter part of her employment, Roller was frequently absent or tardy, and was occasionally seen crying at work, ostensibly due to problems at home. Following the industrial accident, Roller developed psychiatric problems necessitating hospitalization and treatment. Her treating psychiatrist would later testify that preexisting personality traits made Roller less able to cope with an injury and contributed to the seriousness of the psychiatric condition. The e/e resolved Roller’s workers’ compensation claim with a settlement, and then filed a claim for Fund reimbursement. According to the e/c, Roller’s preexisting personality traits combined with her compensable industrial injuries to produce the psychiatric condition. The Fund defended the claim on the grounds that personality traits were not “permanent physical impairments” under the reimbursement provision. The Fund also argued that the employer did not have the requisite knowledge of the preexisting condition to permit reimbursement.
At the hearing on the e/c’s claim for Fund reimbursement, Roller’s supervisor testified that Roller was an “outstanding” employee through the time of her initial employee review in May 1985, some two months after her hiring. Although she still rated “very good” at a September 1985 review, Roller began to have problems with increased absenteeism, crying at work, and leaving early some days due to her emotional state. In March 1986, in the context of a “verbal counseling,” which the supervisor described as the employer’s initial disciplinary measure, Roller blamed her absenteeism and tardiness on problems at home. Apparently, the verbal counseling was unsuccessful, as Roller’s performance problems continued through the date of her industrial accident. Roller never returned to her job after injuring her neck, shoulder and upper back while vacuuming on July 10, 1986.
During the remainder of 1986 and 1987, Roller underwent extensive medical treatment that included jaw and shoulder surgeries. In November 1987, she was hospitalized for a mental breakdown and was initially diagnosed as suffering from major depression. By all accounts, this was the first time Roller had sought or received any kind of psychiatric help. Roller was again hospitalized for depression in February 1988, but her treating psychiatrist, Dr. Linda Harper, made a discharge diagnosis of “adjustment disorder with depressed mood.”
Dr. Harper testified that Roller had preexisting dependent and hysterical personality traits that made her less able to cope with an injury, and predisposed her to the psychiatric condition she experienced after the industrial accident. Concerning the permanence of the personality traits, Dr. Harper stated that she “wouldn’t be in the business” if the traits were permanent, but they did not usually change without long-term treatment.
Interpreting Dr. Harper’s deposition testimony, the JCC concluded that Roller had preexisting personality traits that manifested emotionally and were permanent in nature. The JCC accepted Dr. Harper’s testimony that the traits merged with the industrial injuries to produce a psychological disorder that was substantially greater than that which would have resulted without the traits. On the critical question of the employer’s knowledge, the JCC found, based upon the supervisor’s testimony, that the knowledge requirement was satisfied because the employer was aware of Roller’s emotional outbursts and absenteeism prior to the industrial accident. The requisite findings made, the JCC proceeded to award Fund reimbursement.
To obtain Fund reimbursement, the e/c must establish “that the employer reached an informed conclusion prior to the occurrence of the subsequent injury or occupational disease that the preexisting physical condition is permanent and is, or is likely to be, a hindrance or obstacle to employment.” § 440.-49(2)(f)l., Fla.Stat. (1985); see Special Disability Trust Fund v. Siesta Lago Mobile Homes, 473 So.2d 8 (Fla. 1st DCA 1985).
In the instant case, the employer was not aware of any diagnosed psychiatric condition, but only knew that Roller was having emotional episodes at work apparently related to stress at home. The e/c argue that these *1279 episodes were the outward manifestation of Koller’s underlying problem, so that knowledge of the episodes should be sufficient even if the employer was unaware of the specific underlying condition. In support, the e/c cite Standard, Spray & Chemical v. Special Disability Trust Fund, IRC Order 2-3106 (Feb. 3, 1977), which we find distinguishable. In Standard Spray, the employer did not know the specific nature of its employee’s underlying emotional or psychiatric problem (an anxiety neurosis), but was aware that the employee was an alcoholic, and that some form of psychiatric problem was causing the alcoholism. The Commission concluded that the employer’s knowledge was sufficient to permit Fund reimbursement, even though the precise nature of the underlying condition was unknown to the employer. In the instant case by contrast, the employer was not aware that any psychological component, known or unknown, was responsible for Kol-ler’s emotional episodes. Quite to the contrary, the employer’s own inquiry suggested that Koller’s episodes were caused by problems at home. This, combined with Koller’s “outstanding” performance prior to the onset of the absenteeism and outbursts, further suggests that no permanent preexisting condition was involved.
In sum, even if we were inclined to hold that the employee’s personality traits constituted a permanent physical impairment — a matter we leave unresolved — the evidence is insufficient to establish that the employer had the requisite knowledge of any permanent preexisting physical condition to permit Fund reimbursement. Accordingly, the award of reimbursement is REVERSED.
MINER, WEBSTER and MICKLE, JJ„ concur.